Mr. Justice Shepard
delivered the opinion of the Court:
This is an appeal from a decision of the Commissioner of Patents in an interference proceeding. We do not pass upon the motion to dismiss the appeal, as the question is of no practical importance and it is not necessary to be decided in our view of the case.
*498 On October 19, 1883, John C. Guerrant filed an application for patent for a tobacco-stemming machine. He died in March, 1884, and his.application became abandoned, under the law in such cases, for failure of prosecution. His widow, Mary L. Guerrant, having qualified as administra-trix of his estate, revived the application, which again became abandoned April 14, 1889, and on March 29, 1890, she filed the pending application, upon which patent has been granted.
On November 7, 1889, R. W. Coffee filed his application for a patent for a like machine, which was followed by one in behalf of one George W. Cable, November 25, 1889. The interference was declared in the Patent Office July 5, 1890, the issue raised being that of priority of invention of the matter claimed by each and specified as follows:
“ i. The combination, with süitable feeding devices, of a series of grippers adapted to seize the stem of a tobacco leaf at different points along its length, and means for tearing the leaf from the stem while held by the gripper, substantially as and for the purpose specified.
“2. In a machine for stripping, the stems from tobacco leaves, the combination, with mechanism for feeding the leaves, of grippers for seizing the stems, and means for tearing the leaves from the stems, substantially as shown and described.”
A volume of testimony was taken by the respective parties, and on July 12, 1892, the examiner of interferences decided in favor of the Guerrant claim. Cable acquiesced in this decision, but Coffee appealed to the board of examiners-in-chief, who, on November 17, 1892, affirmed the decision of the examiner, with one dissenting opinion. Coffee then appealed to the Commissioner, who affirmed the board’s decision February 8, 1893, and later refused a rehearing. This decision has been brought here by Coffee for review.
The testimony shows that J. C. Guerrant originated the idea of a tobacco-stemming machine as early as 1877 or 1878, and commenced experiments in execution thereof, *499 which he continued so far as to build a machine and apply for a patent in 1883.
The question to be determined is wholly of fact, there being substantial agreement upon the law of the case. The rule of law is thus stated by the Supreme Court of the United States:
“The invention or discovery relied on must have been complete and capable of producing the result sought to be accomplished. . If the thing were embryonic or inchoate; if it rested in speculation or experiment; if the process pursued for its development had failed to reach the point of consummation, it cannot avail to defeat a patent founded upon a discovery or invention which was completed, while in the other case there was only progress, however near that progress may have approximated to the end in view. The law requires not conjecture but certainty. If the question relate to a machine, the conception must have been clothed in substantial forms which demonstrate at once its practical efficacy and utility. The prior knowledge and use by a single person is sufficient. The number is immaterial. • Until his work is done, the inventor has given nothing to the public. Coffin v. Ogden, 18 Wall., 120. He is the first inventor and entitled to a patent who, being an actual discoverer, has first perfected and adapted the invention to actual use. Whitely v. Swayne, 7 Wall., 685; Agawam Co. v. Jordan, Id., 583.”
A perfect invention does not necessarily mean a perfectly constructed machine, but one so constructed as to embody all the essential elements of the invention in a form that would make them practical and operative; so as to accomplish the result in a reasonable-practical way. American Co. v. Tool Co., 4 Fisher, 299.
The stemming machine invented by Guerrant was far from being a perfect machine; but the evidence satisfies us that his “ conception was clothed in substantial forms which demonstrate at once its practical efficacy and utility.”
Guerrant was poor and had great difficulty in procuring *500 the money with which to construct his first machine. When set up and ready to be given a practical test, it lacked the full equipment of “ gripping-blades.” New ones were added from time to time, but were not all in when Guerrant died. There were, however, gripping blades enough to test the efficacy of the machine and demonstrate its utility.
The machine was set up in a tobacco factory at Danville, Va., a great tobacco manufacturing place. It was operated by hand, and also by steam power, at different times within a short period, and in the presence of a number of people. When fed with the tobacco leaves, prepared for stemming, it performed fairly satisfactory work. But few leaves passed the blades without having the stems properly removed.
In all about one thousand pounds were stemmed upon it. It had not broken down or failed, and was geared and capable of this operation when Guerrant died. Had he lived we think there can be no reasonable doubt but that he would have had his machine duly patented. The process of applying for the patent seems not to have been well managed, and there were defects in the drawings, which had to be corrected. Before the matter could be properly attended to Guerrant died. His widow was left poor, with a large family of children, sickness among whom caused her to remove for a time to North Carolina.
The parties who had been interested with Guerrant and had advanced him small sums of money from time to time were afraid to advance more after his death. They were not mechanics and not capable of comprehending and carrying out the conception and work of the inventor. One of these, Schoolfield, had some new gripping blades made in Baltimore and fitted in the machine. After this it was operated to a very limited extent and stemmed a small quantity of tobacco; but the results were not so satisfactory as were the trials of the machine made before Guerrant’s death. It is a fact that it was never operated continuously for work in a commercial sense. Schoolfield lost confidence in its practical, commercial valúe and made no other attempt with it. *501 His loss of confidence and cessation of endeavor do not prove the soundness of his opinion. Others who saw the machine in operation entertained a different opinion. Guer-rant, who for years had thought of and worked on the invention, at last believed that he had mastered the difficulties in his way and at once applied for a patent. The fact remains, established by a number of witnesses, that, tried from time to time in the rough state of its original construction, the machine did stem tobacco in a manner reasonably satisfactory to practical men, and fairly promising good practical results when it might be constructed with thorough mechanical skill in all of its parts. We are satisfied, from all the evidence, that the Guerrant machine was something more than an unsuccessful experiment; that it was in fact a reasonably successful reduction of the invention to practice.
Nor do we find support in the evidence for the theory that the invention had been abandoned and had been only recalled to memory by the new and successful invention of Coffee. The facts of this case make it a very different one from Howe v. Underwood, 1 Fisher, 160. The original machine was moved from place to place and worked at by various persons. Its pieces have been gathered together and made an exhibit in the case. They were examined, referred to, and identified by several witnesses, and there is no doubt that in all the essential parts constituting the invention they are identical with the application made in 1883, and that made by the administratix in 1890.
The correct conclusion to be arrived at from a consideration of all the evidence respecting this question, is stated with precision in the decision of the majority of the board of examiners as follows:
“ From the time when the application for the invention, the application of 1883, was made until the date of the application for the invention in its final form, the machine itself, on which both applications were based, was preserved, was continuously in use, either partly or wholly dismantled or entirely assembled, for the purpose of obtaining a patent *502 and with a view to its mechanical perfection for actual use in the market or in the factory. During all this time there was effort towards these ends, but by persons not well equipped for the task either with knowledge of the law of patents or with business energy or skill in mechanics.
“ The various changes in the control of the machine and of its invention and the successive contracts respecting the same indicate a belief in the completeness of the invention and a purpose to make the machine mechanically perfect for industrial use for profit.
“ This is not the case of a dismantled and forgotten machine recalled to memory .by the successful effort of a later inventor. The later inventor in this case does not appear to have ever put a machine on the market.
“ This is rather the case of a completed invention successfully reduced to practice, and delayed from patent and from use in the art by the death of the inventor, a competent man, by the poverty of his executrix, and by misdirected efforts of unskilled persons who successively had charge of the embodiment of the invention.”
It is unnecessary to say anything with, respect to the invention of Cable, as he has not appealed from the decision against him; but it may be added that his ideas seem to have all been drawn from the machine of Guerrant. Coffee’s earliest conception of a tobacco-stemming device does not date earlier than 1889. It seems to have occurred to him in the course of some experiments with a machine for manipulating leaf tobacco. His gripping device operates upon the same general principle as Guerrant’s. He examined the Guerrant machine, by permission of those controlling it, in company with Mr. Adams., who was interested at the time in his (Coffee’s) own invention, as well as in the Guerrant machine. His gripping device had not been made and put in his own machine when he saw Guerrant’s. He testifies, however, that his device was matured before he saw Guer-' rant’s and that his inspection did not cause any change. Indeed, he testifies that he did not at the time observe the saw *503 teeth of the grip blades in the Guerrant machine, and was surprised when told afterward by Schoolfield, who examined his machine, that the construction of his blades was similar to that of the blades of the Guerrant machine. From the testimony on this point, it is not, to say the least, altogether clear that Coffee did not obtain the idea of his gripping blade from the one in the Guerrant machine. It is not necessary, however, in the view which wé have taken of the case, to pursue this inquiry further. Its determination is not necessary to a decision of the case.
The Commissioner of Patents did not err in the decision appealed from, and it must therefore be affirmed. It is so ordered, and this decision •will be certified to the Commissioner of Patents for his information and observance.